

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RODELL SANDERS, | ) |
| Plaintiff, | ) Case No. 04 C 5417 |
| v. | ) Magistrate Judge Arlander Keys |
| LAWRENCE NGU, DOCTOR, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rodell Sanders, filed suit, *pro se*, against Defendant, Dr. Lawrence Ngu, alleging a violation of his Eighth Amendment rights based on the lack of proper medical treatment. Presently pending before the Court is Dr. Ngu's motion for summary judgment. For the reasons stated in this order, the motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, by specific factual allegations, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

## FACTS

Plaintiff is currently incarcerated within the Cook County Department of Corrections. At all relevant times, Plaintiff was housed at Joliet Correctional Center or Stateville Correctional Center. (Def.s' 56.1(a)(3) Statement ¶ 2). Dr. Ngu is a physician licenced to practice medicine in the State of Illinois, and was employed as a staff physician at Joliet Correction Center and Stateville Correctional Center at all relevant times. (Id., ¶ 4).

In 1995, while housed at Stateville Correctional Center, Plaintiff was prescribed Triamcinolone. (Def.'s 56.1(a)(3) Statement ¶ 5). Plaintiff was first treated for high blood pressure in 1996 or 1997 at Menard Correctional Center. (Id., ¶ 12). Plaintiff was transferred to Joliet Correctional Center in 1998. (Id., ¶ 9). Plaintiff was not examined or treated by Dr. Ngu between 1995 and 1998. (Id., ¶ 10). Prior to 1999, Plaintiff was also prescribed Triamcinolone on a regular basis while housed at Menard Correctional Center. (Id., ¶¶ 6-7).

At some time after 1998, Plaintiff received treatment from Dr. Ngu, as well as other physicians. (Def.'s 56.1(a)(3) Statement ¶ 11; Plaint.'s Response ¶ 11). On March 31, 1999, Dr. Zuan examined Plaintiff and prescribed 0.1% Triamcinolone. (Def.'s 56.1(a)(3) Statement ¶ 16; Exh. F). On December 24, 1999, Plaintiff was examined by Dr. Sood. Plaintiff was diagnosed with a cystic face rash and was prescribed Triamcinolone and Lidex cream. (Def.'s 56.1(a)(3) Statement ¶ 14). On January 18, 2000, Plaintiff was again examined by Dr. Sood. Dr. Sood noted that Plaintiff's dermatitis was resolving and prescribed Triamcinolone and Lidex cream. (Id., ¶ 15). On

April 19, 2000, Plaintiff was examined by Dr. Koko. Dr. Koko noted that Plaintiff suffered from a facial rash for over five years and that he only responded to Lidex cream. Dr. Koko prescribed Triamcinolone. (Id., ¶ 17). Plaintiff was again examined by Dr. Koko on May 17, 2000. Dr. Koko noted that Plaintiff suffered from dermatitis and directed to continue Triamcinolone, twice weekly. (Id., ¶ 18). On August 9, 2000, Plaintiff was examined by Dr. Idowu. Dr Idowu also prescribed Triamcinolone. (Id., ¶ 19).

On February 2, 2001, Plaintiff was examined by Dr. Ngu. Dr, Ngu diagnosed a rash on Plaintiff's face and scalp and prescribed Triamcinolone. (Def.s 56.1(a)(3) Statement ¶ 20). On March 21, 2001, Plaintiff was examined by Dr. Koko based on a medication referral for his face dermatitis. Again, Dr. Koko prescribed Triamcinolone. (Id., ¶ 21). On May 14, 2001, Plaintiff was examined by Dr. Ngu for an evaluation of his facial rash. Dr. Ngu diagnosed dermatitis and prescribed Lidex cream. (Id., ¶ 22). On June 19, 2001, Plaintiff was examined by Dr. Ngu for a re-evaluation of his chronic facial rash. (Id., ¶ 23). On September 11, 2001, Plaintiff was transferred from Joliet Correctional Center to Stateville Correctional Center. Fluocinoide (Lidex) was listed as one of the Plaintiff's chronic long term medications on Plaintiff's transfer sheet. (Id., ¶ 24). On November 20, 2001, Plaintiff was examined by Dr. Ngu to evaluate his amended complaints of dizziness. Dr. Ngu prescribed Vasotec, Atenolol, Propoanolol, and Niacin. (Id., ¶ 25).

On May 10, 2003, Plaintiff was examined by Dr. Tilden for a recurrent oral ulcer. Dr. Tilden prescribed Triamcinolone. (Def.'s 56.1(a)(3) Statement ¶ 26). On July 28, 2003, Plaintiff was examined by Dr. Ghosh for his oral ulcer. Dr. Ghosh prescribed Lidocaine and Acyclovir. (Id., ¶ 27). As of February 26, 2007, Plaintiff was still using Triamcinolone paste to treat his lichen planus. (Plaint.'s Dep. p. 6).

3

Plaintiff testified that he filed medical grievances and "most" of them resulted in appointments with a doctor or the Medical Director or a writ to the University of Illinois to see a specialist. (Def.'s 56.1(a)(3) Statement ¶ 29). Plaintiff further testified that he would write letters to Dr. Tilden, Dr. Smith, and Dr. Ghosh asking for refills of his medications. (Id., ¶¶ 30-31).

In August 2004, Plaintiff initiated this Section 1983 action. By amended complaint filed in May 2005, Plaintiff alleged that Dr. Ngu was deliberately indifferent to Plaintiff's serious medical needs because Dr. Ngu prescribed corticosteroids for extended periods for the treatment of Plaintiff's skin condition. Dr. Ngu moves for summary judgment, arguing that: (1) Plaintiff failed to exhaust his administrative remedies and (2) Plaintiff cannot establish a Section 1983 claim of deliberate indifference to a serious medical condition.

## ANALYSIS

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

An inmate must take all the steps required by the prison or jail's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Exhaustion is a precondition to filing suit, so that an inmate's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *Ford*, 362 F.3d at 398; *Perez v. Wisconsin Dep't of Corrections*, 182

4

F.3d 532, 536-37 (7th Cir. 1999). The purpose of the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before the filing of a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Failure to exhaust administrative remedies is an affirmative defense; correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

The grievance procedure, as set forth in the Illinois Administrative Code, provides that an inmate shall first attempt to resolve the issue with his or her counselor. If the issue cannot be resolved with the counselor or if the grievance pertains to a disciplinary proceeding, the inmate may file a written grievance within sixty days of the incident. 20 Ill. Admin. Code 504.810(a). The Chief Administrative Officer shall advise the inmate of the findings and recommendations within two months of the receipt of the written grievance. 20 Ill. Admin. Code 504.830 (d).

If an inmate does not believe that a grievance has been resolved to his or her satisfaction, the inmate may appeal in writing to the Director within thirty days after receiving the Chief Administrative Officer's findings and recommendation. 20 Ill. Admin. Code 504.850. The Director reviews the appeal to determine if a hearing before the Administrative Review Board is required. If the Director determines that the grievance is meritless or can be resolved without a hearing, the inmate is so advised in writing. If the grievance requires a hearing, the Administrative Review Board conducts a hearing and submits a written report to the Director. The Director then makes a final decision within six months of receipt of the appealed grievance, where reasonably feasible. 20 Ill. Admin. Code 504.850.

Plaintiff has provided the Court a response, signed by an Administrative Review Board member and Director Roger Walker, regarding Plaintiff's grievance concerning "medical treatment (drugs prescribed)." Plaintiff's grievance was denied because the office found that "the issue was appropriately addressed by the institutional administration." In light of the response provided by Plaintiff, the summary judgment evidence does not demonstrate that Plaintiff failed to exhaust his administrative remedies. *See Dole*, 438 F.3d at 809. Accordingly, summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies is denied.

Dr. Ngu next argues that Plaintiff failed to demonstrate that Dr. Ngu acted with deliberate indifference to Plaintiff's medical needs.

The deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious." *Guiterrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is sufficiently serious if it has been diagnosed by a physician as mandating treatment or it so obvious that even a lay person would recognize the necessity of medical treatment. *See Foelker v. Outgamie County*, 394 F.3d 510, 512 (7th Cir. 2005).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (2006). The negligent or inadvertent failure to provide adequate medical care is not sufficient because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience

6

of mankind." *Estelle*, 429 U.S. at 106. Furthermore, medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker*, 394 F.3d at 513. However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *See Walker*, 293 F.3d at 1037. As applied to claims of deliberate indifference based on a physician's treatment decision, "the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. A difference of opinion among physicians as to the proper treatment is insufficient to support a finding of deliberate indifference. *See Norfleet*, 439 F.3d at 396.

Dr. Ngu argues that Plaintiff has failed to demonstrate that Dr. Ngu acted with deliberate indifference by prescribing Plaintiff Triamcinolone and Lidex (corticosteroids) for treatment of his skin condition. Plaintiff argues that Dr. Ngu's prolonged treatment of Plaintiff's skin condition with corticosteroids constitutes deliberate indifference because Dr. Ngu knew that the prolonged use of the corticosteroids was causing Plaintiff serious harm, including damage to Plaintiff's face, headaches, chest pains, blurred vision, and high blood pressure.

Plaintiff began being treated with corticosteroids for his skin condition in 1995. Plaintiff began receiving treatment for high blood pressure in 1996 or 1997. Prior to 1999, Plaintiff was prescribed a corticosteroid on a regular basis by physicians other than Dr. Ngu. The parties dispute when Dr. Ngu initially started prescribing corticosteroids to Plaintiff - Plaintiff contends it was

7

sometime after 1998 but before February 2, 2001, Defendant contends that Dr. Ngu first treated Plaintiff on February 2, 2001. However, even when viewing this disputed fact in favor of Plaintiff, Dr. Ngu was not the only physician treating Plaintiff after 1998 and was not the only physician that prescribed corticosteroids for the treatment of Plaintiff's skin condition. To the contrary, at least four other physicians prescribed corticosteroids to Plaintiff for the treatment of his skin condition. Furthermore, the corticosteroids were prescribed on a regular basis, for example: December 1999, January 2000, April 2000, and May 2000. Dr. Ngu, as well as other physicians, continued to prescribe corticosteroids to Plaintiff for the treatment of his skin condition. In 2003, Dr. Tilden and Dr. Ghosh were still prescribing corticosteroids and, as of July 2007, Plaintiff was still using a corticosteroid. Thus, Dr. Ngu's decision to prescribe corticosteroids to Plaintiff over an extended period of time cannot be said to be "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396.

Plaintiff further argues that Dr. Ngu was deliberately indifferent to his medical needs because some of Dr. Ngu's prescriptions for corticosteroids were removed from Plaintiff's medical records and that Dr. Ngu had secretly told Plaintiff that he could get in trouble for prescribing the corticosteroids. Dr. Ngu denies these allegations. Even accepting these allegations as true, Plaintiff's claim still fails. As discussed above, the treatment of Plaintiff's skin condition with corticosteroids was consistent with Plaintiff's medical treatment by multiple other physicians. Furthermore, Plaintiff has failed to demonstrate that Dr. Ngu knew of a substantial risk of harm to Plaintiff by the use of corticosteroids and that he failed to act in disregard to that risk. Plaintiff argues that Dr. Ngu knew that the use of corticosteroids was causing Plaintiff serious harm because Dr. Ngu was aware of grievances and letters Plaintiff and Plaintiff's attorney had written. However,

all of the grievances and letters Plaintiff relies upon fail to include any indication that the use of corticosteroids was causing Plaintiff serious harm. Instead the grievances and letters refer to Plaintiff experiencing a "pop" inside his head, hypertension, high blood pressure, and dietary needs. None of the grievances or letters include even mention of corticosteroids. Nor can the risk of harm be considered obvious in light of multiple other physicians prescribing the same corticosteroids both before and after Dr. Ngu had prescribed the corticosteroids. The summary judgment evidence thus demonstrates that Plaintiff's claim that Dr. Ngu acted with deliberate indifference is without merit.

## CONCLUSION

For the foregoing reasons, Dr. Ngu's motion for summary judgment is granted.


Entered: October 3, 2008                      _____
                                              Arlander Keys
                                              United States Magistrate Judge

all of the grievances and letters Plaintiff relies upon fail to include any indication that the use of corticosteroids was causing Plaintiff serious harm. Instead the grievances and letters refer to Plaintiff experiencing a "pop" inside his head, hypertension, high blood pressure, and dietary needs. None of the grievances or letters include even mention of corticosteroids. Nor can the risk of harm be considered obvious in light of multiple other physicians prescribing the same corticosteroids both before and after Dr. Ngu had prescribed the corticosteroids. The summary judgment evidence thus demonstrates that Plaintiff's claim that Dr. Ngu acted with deliberate indifference is without merit.

## CONCLUSION

For the foregoing reasons, Dr. Ngu's motion for summary judgment is granted.

Entered: October 7, 2008

Arlander Keys
United States Magistrate Judge